UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EILIONORA E. DONELSON, et al.,

    Plaintiffs,

v.

MEIJER, INC., et al.,

    Defendants.
_____/

Case No. 1:25-cv-1156

Hon. Hala Y. Jarbou

## OPINION

Plaintiffs are participants in an employee retirement plan administered by Defendants Meijer, Inc., and its Board of Directors (collectively "Meijer"). Plaintiffs bring this putative class action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, alleging that Meijer's use of forfeited funds to reduce its contribution obligations violated the company's fiduciary duties. Plaintiffs assert that Meijer (1) breached its duties of loyalty and prudence by misallocating forfeited funds; (2) engaged in transactions prohibited by 29 U.S.C. §§ 1106(b) and 1106(a)(1)(D); (3) breached its duty of loyalty by delaying the use of forfeited funds; and (4) failed to monitor fiduciaries under its direction and control. Meijer moves to dismiss on all counts (ECF No. 18). For the reasons explained below, the Court will grant the motion and dismiss the case.

### I. BACKGROUND

Meijer is a privately owned company that operates hundreds of grocery stores across the United States. (Compl. ¶ 17, ECF No. 1.) At issue in this case are two 401(k) retirement plans the company provides to its employees, one for union workers and one for non-union workers. (*Id.* ¶ 31.) For simplicity, the Court will refer to these collectively as a single "plan." The plan's

assets are held in a trust fund administered by Meijer. (*See id.* ¶¶ 19, 33.) Meijer makes a base contribution to the plan and matches 50% of employee contributions up to a specified limit. (*Id.* ¶¶ 35, 37.) However, an employee must work at Meijer for five years in order to receive the full matching contributions they have earned. (*Id.* ¶ 39.) If an employee leaves before the five-year mark, some of the funds that were intended to be their matching contributions are instead "forfeited" to the general trust. (*See id.*) This case turns on how Meijer has used those forfeited funds.

The plan in operation during the relevant time permitted Meijer to use the forfeited funds for two things. First, Meijer could "pay reasonable administrative expenses of the Plan." (*Id.* ¶ 42 (emphasis removed).) If the forfeitures were not used to pay administrative expenses, those expenses would instead be paid from participants' accounts. (*See id.* ¶ 47.) Second, Meijer could use the forfeitures "to reduce Employer contributions" to the plans. (*Id.* ¶ 42 (emphasis removed).) In other words, if Meijer committed to pay a certain amount in base contributions and matching funds, the forfeitures could be used to cover some of those costs and decrease Meijer's payment obligation.

Between August 2019 and January 2025, Meijer used the forfeitures solely to reduce employer contributions. (*Id.* ¶ 52.) In January 2025, Meijer amended the plans to require that forfeitures be used first to reduce employer contributions, and then (if forfeited funds remain) to pay administrative expenses. (*Id.* ¶ 50.) Plaintiffs allege that from 2019 to 2025, when Meijer had the option to use the forfeited funds to pay administrative expenses, the failure to do so violated ERISA. Furthermore, at the end of each year from 2019 to 2024, there were unused forfeited funds remaining in the trust account. (*Id.* ¶ 106.) Plaintiffs allege that Meijer's failure to timely use these forfeitures also violated ERISA.

2

## II. LEGAL STANDARD

A complaint may be dismissed for failure to state a claim if it fails "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).

## III. ANALYSIS

### A. Misallocation of Forfeitures

#### 1. Fiduciary Duties

Plaintiffs first contend that Meijer's use of forfeitures to reduce employer contributions violated ERISA's duty of loyalty. ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104. Here, the plan

3

provided Meijer discretion to use forfeitures to either pay administrative costs or reduce employer contributions. Plaintiffs argue that the duty of loyalty obligated Meijer to use this discretion to aid the beneficiaries or defray administrative costs. The use of forfeitures to reduce employer contributions did neither—it merely allowed Meijer to pay less in contributions. Thus, Plaintiffs contend, this use of forfeitures violated Meijer's duty of loyalty.

Meijer objects that its duty of loyalty only requires it to provide Plaintiffs the benefits they were promised by the plan. And it contends that paying administrative expenses with the forfeitures would be an extra benefit not promised by the plan, which allows (but does not require) Meijer to use the forfeitures in that way. As an initial matter, although forfeitures exist in a somewhat liminal state—belonging to the trust but not to any individual within it—they are assets of the plan, so Meijer's fiduciary duties applied to its use of them. *See* 29 U.S.C. § 1104(a)(1) (fiduciary duties apply to actions taken "with respect to a plan"); *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 943 (N.D. Cal. 2024) ("Generally, 'all assets paid-in are treated as plan assets and an entity that takes actions in regard to their management and disposition must be judged against ERISA's fiduciary standards.'" (quotation marks omitted) (quoting *Trs. of S. Cal. Bakery Drivers Sec. Fund v. Middleton*, 474 F.3d 642, 646 (9th Cir. 2007))); *Cano v. Home Depot, Inc.*, No. 24-cv-03793, 2025 WL 2589567, at *3 (N.D. Ga. Aug. 26, 2025) ("Forfeitures are plan assets if they are property owned by the ERISA plan."). ERISA requires fiduciaries to act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), without any explicit limitations related to expected or promised benefits.

However, the better reading of ERISA is that a fiduciary's duties are only to provide beneficiaries the specific benefits promised in the plan. A fiduciary must act "for the exclusive purpose of . . . providing *benefits* to participants and their beneficiaries," *id.* § 1104(a)(1)(A)(i)

4

(emphasis added), which implies that the fiduciary duty is understood relative to the plan that specifies the relevant benefits. This fact is most apparent in the case of defined benefit plans, which provide beneficiaries with a specific regular payment regardless of how much the plan has in assets. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999). If the assets of a defined benefit plan grow beyond the amount it needs to pay benefits, the fiduciary is not obligated to give the surplus to the beneficiaries, because they are only entitled to a specific payment. *Cf. id.* (beneficiaries of defined benefit plan "have no interest in the Plan's surplus"). The only way to reconcile this fact with § 1104(a)(1)'s apparently limitless duty of loyalty is to recognize that a fiduciary's obligation is implicitly circumscribed by the plan at issue and its promise of benefits.

The fiduciary duties set out in § 1104(a)(1) apply equally to defined contribution plans, so the implicit limitations on those duties also apply to defined contribution plans. It is true that the beneficiaries of a defined contribution plan *would* be entitled to a surplus resulting from the plan's investments. But a defined contribution plan still specifies the benefits employees receive; it just does so differently than a defined benefit plan. In a defined contribution plan, benefits are "based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34). Just as fiduciaries managing a defined benefit plan need only provide beneficiaries the monetary payment they were promised, fiduciaries managing a defined contributions plan need only provide beneficiaries the money in their individual accounts. And § 1002(34) recognizes that employees may be entitled to funds forfeited by others, but only *if those forfeitures are allocated to their individual accounts*. Before that happens, employees are not entitled to others' forfeited funds. *See, e.g., Hutchins v. HP Inc.*, 767 F. Supp. 3d 912, 924 (N.D. Cal. 2025) ("[T]he fiduciary duty is fulfilled where the fiduciary ensures that

5

participants have received their promised benefits." (citing *Foltz v. U.S. News & World Rep., Inc.*, 865 F.2d 364, 373 (D.C. Cir. 1989))); *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013) ("ERISA's principal function[ is] to 'protect contractually defined benefits.'" (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985))).

Plaintiffs suggest that even if Meijer was only required to provide the benefits promised in the plan, the plan *does* promise that the forfeitures will be used for expenses. Their implicit argument is that the discretionary choice provided in the plan, combined with Meijer's fiduciary duties, would indicate to any employee reading the plan that Meijer would use the forfeitures to reduce expenses. *See McManus v. Clorox Co.*, No. 4:23-CV-05325-YGR, 2025 WL 732087, at *4 n. 6 (N.D. Cal. Mar. 3, 2025) ("[P]laintiff does not ask for more than what the Plan promised; he claims that the Plan, when read in conjunction with ERISA's fiduciary duty statutes, promises a particular outcome."). To the extent that this argument relies on the premise that § 1104(a)(1) obligated Meijer to use the funds to reduce expenses, that premise is incorrect for the reasons discussed above. And if Plaintiffs' argument is that Meijer was obligated to use the funds for expenses because it promised to do so in the plan, then their reasoning is circular: the only reason Plaintiffs read a promise into the plan is because of Meijer's obligation to use the funds to pay expenses. The better interpretation of the plan is that Meijer promised nothing regarding forfeitures, leaving that decision entirely to the discretion of the fiduciary. And because Meijer made no promises regarding forfeitures, it did not violate its fiduciary duties.

The Court is also compelled to dismiss Plaintiffs' claims based on *Holliday v. Xerox Corp.*, 732 F.2d 548 (6th Cir. 1984), a case that was not cited by the parties but that is nonetheless binding here. In *Holliday*, the employer's retirement plan provided employees a guaranteed income, but the amount of income each employee received was reduced if they received other benefits from

6

the same employer. Each employee had two pension accounts: benefits from their "retirement" account would reduce their guaranteed income, but benefits from their "optional" account would not. At issue in the case was the employer's decision (as fiduciary) to move funds from employees' optional accounts to their retirement accounts, which in turn reduced their guaranteed income. *Id.* at 549. The plaintiff argued that this decision violated a provision of ERISA mandating that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). The Sixth Circuit disagreed, reasoning that the employer "could have accomplished the same result by mandating in [the retirement plan] that funds in employees' optional accounts, as well as funds in their retirement accounts, would be set off." *Holliday*, 732 F.2d at 551. Because the employer could have reduced beneficiaries' guaranteed income by amending the plan in its capacity as employer, it could also do so by transferring funds in its capacity as fiduciary.[1]

This "greater-power-includes-the-lesser" argument may appear flawed at first glance because an employer has no fiduciary duties when amending a plan. *See Hughes*, 525 U.S. at 443–45. Thus, if an employer may do as fiduciary whatever it may do via plan amendment, it seems that all fiduciary duties could disappear. But ERISA itself assuages this concern. Disputes over fiduciary duty most commonly arise in the context of managing existing funds within a plan. An employer generally lacks the power to affect existing funds via plan amendment because ERISA bars amendments that retroactively reduce accrued benefits. *See* 29 U.S.C. § 1054(g)(1). Thus, the only way an employer can affect existing funds is as a fiduciary, and it is limited in doing so

---

[1] Although *Holliday* addressed a different ERISA provision than the one at issue here, the provisions use similar language and the Sixth Circuit's reasoning applies squarely to this case. *Cf. United Steelworkers of Am., Loc. 2116 v. Cyclops Corp.*, 860 F.2d 189, 200 (6th Cir. 1988) (characterizing *Holiday* as a case about fiduciary duties).

7

by fiduciary duties. Here, on the other hand, the decision to use forfeited funds is entirely prospective and does not impact existing benefits. And because Meijer had discretion as a matter of plan design regarding the use of forfeitures, it did not eliminate that discretion by delegating the decision to a fiduciary.

ERISA also imposes upon fiduciaries a duty of prudence. 29 U.S.C. § 1104(a)(1)(B) (requiring fiduciary to discharge duties "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of like character and with like aims"). Plaintiffs argue that Meijer's use of forfeitures violated its duty of prudence because Meijer "did not . . . investigate whether there was a risk that Meijer would default on its Plans' contributions if forfeitures were used to pay Plans' administrative expenses, or evaluate whether there were sufficient forfeitures to eliminate the Plans' administrative expenses charged to participants and still offset a portion of Meijer's own contribution obligations," or "consult with independent non-conflicted decisionmakers to advise them in deciding upon the best course of action for allocating the forfeitures in the Plans." (Compl. ¶¶ 84–85). Because these claims merely reframe the duty-of-loyalty arguments in terms of prudence, the above analysis applies to them as well.

In sum, Plaintiffs have failed to state a claim for breach of fiduciary duty based on Meijer's use of forfeitures to reduce employer contributions. This holding aligns with the significant majority of courts across the country that have considered similar claims. *See, e.g.*, *Hutchins*, 737 F. Supp. 3d at 862; *Garner v. Northrop Grumman Corp.*, No. 1:25-CV-00439 (AJT/WEF), 2025 WL 3488657, at *4 (E.D. Va. Dec. 4, 2025); *Middleton v. Amentum Parent Holdings, LLC*, No. 23-CV-2456-EFM-BGS, 2025 WL 2229959, at *15 (D. Kan. Aug. 5, 2025); *Barragan v. Honeywell Int'l Inc.*, No. 24CV4529 (EP) (JRA), 2024 WL 5165330, at *4 (D.N.J. Dec. 19, 2024); *Bozzini v.*

*Ferguson Enters. LLC*, No. 22-cv-05667, 2025 WL 1547617, at *2 (N.D. Cal. May 29, 2025); *Cain v. Siemens Corp.*, No. CV 24-8730, 2025 WL 2172684, at *4–5 (D.N.J. July 31, 2025); *Cano*, 2025 WL 2589567, at *4–5; *Brown v. Peco Foods, Inc.*, No. 3:25-CV-491-TSL-RPM, 2025 WL 3210857, at *5 (S.D. Miss. Nov. 14, 2025) (collecting cases).[2] It also aligns with the long-held position of the United States Department of Treasury that forfeitures in defined contribution plans may be used to reduce employer contributions. *See, e.g.*, Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12282-01, 12283 (Feb. 27, 2023) (to be codified at 26 C.F.R. pt. 1) ("[T]he proposed regulations would clarify that forfeitures arising in any defined contribution plan . . . may be used . . . as specified in the plan: (1) to pay plan administrative expenses, (2) to reduce employer contributions under the plan, or (3) to increase benefits in other participants' accounts . . . ."); Internal Revenue Manual § 7.12.1.9(6), 2007 WL 9649931, at *1 ("Forfeitures must be allocated to the remaining participants or used to reduce the employer contributions that are otherwise required under the plan.").

### 2. Prohibited Transactions

Plaintiffs also argue that Meijer's use of forfeitures to reduce employer contributions violated ERISA's prohibition on certain types of transactions. Subject to certain exceptions, "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect— . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." *Id.* § 1106(a)(1)(D). A "party in

---

[2] Courts have considered claims essentially identical to these in at least 24 cases, and have only allowed them to proceed in 5. *See Becerra v. Bank of Am. Corp.*, No. 3:24-CV-921-MOC-DCK, 2025 WL 3032922, at *3 (W.D.N.C. Aug. 12, 2025)*; Perez-Cruet v. Qualcomm Inc.*, No. 23-cv-1890, 2024 WL 2702207, at *3 (S.D. Cal. May 24, 2024); *McManus*, 2025 WL 732087, at *4–5; *Buescher v. N. Am. Lighting, Inc.*, 791 F. Supp. 3d 873, 887–89 (C.D. Ill. 2025); *Rodriguez*, 744 F. Supp. 3d at 943–44. A court also allowed similar claims to proceed in *Parker v. Tenneco Inc.*, No. 23-CV-10816, 2025 WL 1173011, at *6 (E.D. Mich. Apr. 22, 2025), but it did not address the arguments that Meijer makes here.

interest" includes "an employer any of whose employees are covered by such plan." 29 U.S.C. § 1002. Furthermore, "[a] fiduciary with respect to a plan shall not . . . deal with the assets of the plan in his own interest or for his own account." *Id.* § 1106(b)(1). Plaintiffs contend that Meijer violated both (a)(1)(D) and (b)(1).

Meijer argues that it has not violated these provisions because using forfeitures to reduce employer contributions is not a "transaction." Whether § 1106(a) and (b) apply to a fiduciary's transfer of money within an account is an unsettled question on which courts have disagreed. *Contrast, e.g., Buescher*, 2025 WL 1927503, at *18 ("[T]ransactions tend to involve multiple parties and some sort of exchange between them."), *with Rodriguez*, 744 F. Supp. 3d at 949 ("Here the alleged 'transaction' is [the employer]'s reallocation of undisputed plan assets to reduce its own matching contribution."). Resolving the disagreement here is unnecessary because Plaintiffs' interpretation of § 1106 is foreclosed by *Holliday*. There, the Sixth Circuit reasoned that the employer's transfer of pension funds to reduce its own monetary obligations did not violate an ERISA provision mandating that "the assets of a plan shall never inure to the benefit of any employer." 29 U.S.C. § 1103; *Holliday*, 732 F.2d at 551. It explained that the transfer was not "a prohibited 'benefit'" because the employer "could have accomplished the same result by" amending the retirement plan. *Holliday*, 732 F.2d at 551. In other words, the provisions of ERISA that limit an employer's ability to benefit from a fiduciary's actions are inapplicable when the employer could achieve the same benefit via plan amendment. Thus, because Meijer could have implemented an amendment requiring forfeitures to go toward employer contributions, it could also achieve that same outcome by acting as a fiduciary without violating ERISA.

### B. Delayed Use of Forfeitures

Plaintiffs also contend that Meijer violated its fiduciary duty of prudence by failing to use the forfeitures within the calendar year that they accumulated. The plan required Meijer to allocate

10

the forfeitures "no later than the end of the Plan Year immediately following the Plan Year in which the Forfeiture occurred." (Compl. ¶ 97.) Additionally, Plaintiffs point to an IRS article explaining that, under the applicable tax laws, a plan cannot "carry[] over plan forfeitures to subsequent plan years, as doing so would defy the rule requiring all monies in a defined contribution plan to be allocated annually to plan participants." (*Id.* ¶ 101 (quoting Internal Revenue Service, Retirement News for Employers 4 (2010), https://perma.cc/SZK9-8RGP).) Plaintiffs contend that Meijer did not timely use the forfeited funds, causing the beneficiaries to lose out on potential returns from those funds.

As an initial matter, the Court agrees with Meijer that Plaintiffs have not alleged the company violated its plan or contradicted IRS guidance. The plan states that Meijer had until the *following* year to use forfeitures, so a year-end balance does not indicate noncompliance with the plan—the outstanding funds may have only accumulated during that year. And the IRS guidance merely requires *allocation* by year's end, rather than actual *use*. Of course, the fact that Meijer's delay does not violate the plan or IRS guidance does not necessarily mean that it was prudent financial policy. But Plaintiffs provide no reason to think that the mere existence of a forfeiture balance at year's end necessarily implies an unreasonable delay. In 2023, the IRS proposed a new rule "require[ing] that plan administrators use forfeitures no later than 12 months after the close of the plan year in which the forfeitures are incurred," noting that "[t]his deadline is intended to simplify administration by providing a single deadline for the use of forfeitures . . . and to alleviate administrative burdens that may arise in using or allocating forfeitures if forfeitures are incurred late in a plan year." 88 Fed. Reg. at 12284. In other words, the IRS has recognized (and common sense confirms) that it is sometimes practical to not immediately use forfeitures. Although there

11

may be circumstances under which a delay is unreasonable, Plaintiffs have not alleged sufficient facts to plausibly suggest that the delay at issue here was unreasonable.

### C. Failure to Monitor Fiduciaries

Plaintiffs also allege that, insofar as the decisions regarding the trust were made by fiduciaries under Meijer's supervision, Meijer breached its own fiduciary duties by failing to monitor its supervisees. "There can be no doubt that the ERISA statutory scheme imposes a duty to monitor upon fiduciaries when they appoint other persons to make decisions about the plan." *In re AEP ERISA Litig.*, 327 F. Supp. 2d 812, 832 (S.D. Ohio 2004). But because Plaintiffs have not alleged any underlying breaches of fiduciary duty, they have also not alleged a corresponding failure to monitor. *See Davis v. Magna Int'l of Am., Inc.*, No. 20-11060, 2023 WL 3821807, at *8 (E.D. Mich. June 5, 2023) ("[A] failure to monitor claim does not survive absent a predicate breach of fiduciary duty by a monitored fiduciary." (quoting *Saumer v. Cliffs Nat. Res. Inc.*, 2016 WL 8668509, *8 (N.D. Ohio Apr. 1, 2016))).

### IV. CONCLUSION

For the reasons explained above, Plaintiffs have failed to state a claim for violations of ERISA. The Court will thus grant Meijer's motion and dismiss the case.

An order and judgment will issue in accordance with this Opinion.

Dated: December 29, 2025        /s/ Hala Y. Jarbou
                                HALA Y. JARBOU
                                CHIEF UNITED STATES DISTRICT JUDGE